UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. COMPLIN,<br><br>Plaintiff/Relator,<br><br>v.<br><br>NORTH CAROLINA BAPTIST HOSPITAL and CAROLINAS HEALTHCARE SYSTEM,<br><br>Defendants. | C.A. No. 1:09CV420 |

**North Carolina Baptist Hospital's
Reply in Support of Its Motion to Dismiss**

Philip J. Mohr, N.C. State Bar #24427
Brent F. Powell, N.C. State Bar #41938
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660

Sandra Miller (by special appearance)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
550 South Main Street
Suite 400
Greenville, SC 29601

*Attorneys for North Carolina Baptist Hospital*

## INTRODUCTION

Relator Complin/Vincoli's Opposition Brief confirms that Vincoli has no direct, first-hand knowledge of North Carolina Baptist Hospital's ("NCBH") alleged scheme. Although Vincoli concedes that his claims are based on circumstantial evidence (at best), he urges the Court to allow this case to proceed on little more than his own *ipse dixit*. Vincoli's speculative and conclusory allegations, however, do not provide a basis from which the Court can plausibly infer that NCBH *knowingly* submitted false claims to the Government. Vincoli's retaliation claim also fails because it is based on actions that occurred years after he stopped working at NCBH.

## ARGUMENT

**I. THE RELATOR FAILS TO SUFFICIENTLY ALLEGE NCBH *KNOWINGLY* PRESENTED A FALSE CLAIM.**

The Relator asserts claims under 31 U.S.C. §3729(a)(1)(A) and §3729(a)(1)(B). (ECF No. 62 at ¶68.) Under either section, the Relator must prove NCBH *knowingly* submitted a false claim. 31 U.S.C. §3729(b)(1). To properly allege "knowledge" so as to survive a motion to dismiss, the Relator "must set forth specific facts that support an inference of fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted); *see also U.S. ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 583 (E.D. Va. 2010) (in order to survive a motion to dismiss, an FCA complaint "must give sufficient factual support for [the defendant's alleged] knowledge."). Relator fails to provide any such factual support but asserts that the Court can legally presume NCBH acted "knowingly" if either (a) the Cost Reports

contain an error or (b) NCBH had motive and opportunity. Relator is wrong on both counts.

### A. "Knowledge" Requires More Than Simply Submitting an Erroneous Cost Report.

The FCA's purpose is to prevent fraud on the government. *U.S. ex rel. Rostholder v. Omnicare, Inc.,* 745 F.3d 694, 700 (4th Cir. 2014). Unlike other types of litigation, the FCA does not permit initial allegations of fraudulent activity to be made "upon information and belief" and then buttressed through subsequent discovery. *See Wilson*, 525 F.3d at 379 ("[I]f allowed to go forward, Relators' FCA claim would have to rest primarily on facts learned through the costly process of discovery. This is precisely what Rule 9(b) seeks to prevent."). Instead, the FCA requires the Relator make initial factual allegations that have some reliability to support a claim that the defendant acted with scienter. *U.S. ex rel. Garzione v. PAE Government Services, Inc.*, 2016 WL 775780, *7 (E.D. Va. Feb. 25, 2016) (dismissing FCA claim on the basis that the relator failed to allege "facts that make plausible his claims that [the defendant] knew that its submitted [claims were erroneous].").

Although Relator alleges that NCBH knew its Cost Reports were false when submitted (ECF No. 62 at ¶¶2, 18, 20, and 65), he alleges no facts—either in the Amended Complaint or in his Opposition brief—to support this conclusory allegation. Relator makes no allegations, for example, that NCBH was ever on notice of the alleged errors in its Cost Reports, that NCBH employees had conversations or "bragged about" NCBH's alleged wrongdoing, or that "red flags" existed about the purported Cost Report

2

errors. *Compare U.S. ex. rel. Pilecki-Simko v. Chubb Inst.*, C.A. No. 06-3562, 2010 WL 3463307, *6 (D.N.J. Aug. 27, 2010). In short, the Relator has failed to allege any facts that one would expect to see in support of an inference that NCBH knowingly submitted fraudulent claims.

Left without any facts, the Relator first argues he has satisfied §3729(b)(1)'s "knowledge" requirement because NCBH is "presumed to know the law," and therefore any error in the Cost Reports must have been done "knowingly" and intentionally. (ECF No. 73 at 5.) This argument is contrary to well-established FCA case law.

Relator alleges NCBH's Cost Reports were prepared in a way that violated his interpretation of various Medicare regulations.[1] Even assuming that NCBH Cost Reports are erroneous (which NCBH denies), merely submitting an inaccurate Cost Report does not support an FCA claim. The Relator must also allege—with factual support—that the false claim was submitted with scienter. *Omnicare*, 745 F.3d at 702. "[N]either mistaken conduct nor negligence is actionable under the False Claims Act." *U.S. ex rel. Phillips v.*

---

[1] Relator's FCA claims are based entirely upon his own interpretation of various Medicare regulations (ECF No. 62 at ¶¶13-17, 19-20), how those regulations must be read in combination with one another (*id*. at ¶¶26-30), how the 2007 *St. Francis Hospital* decision from the non-binding Medicare Provider Reimbursement Review Board supposedly affected the interpretation of these regulations (*id.* at ¶¶12, 38) and how all of these combine in a way that not only supposedly imparts liability on CHS (*id*. at ¶¶39-46, 69) but gives the outward appearance that the Cost Reports are completely legitimate. (ECF No. 73 at 19). But to satisfy the first element of an FCA claim, the statement must represent an "objective falsehood." *See Wilson*, 525 F.3d at 376. ("[I]mprecise statements or differences in interpretation growing out of a disputed legal questions are similarly not false under the FCA," quoting *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999). In the instant case, Relator's tortured reading of the Medicare regulations to try and imply an FCA claim does not involve an "objective falsehood."

*Pediatric Services of America, Inc.*, 142 F. Supp. 2d 717, 732 (W.D.N.C. 2001). Rather, "the claim [at issue] must be a lie." *Phillips*, 142 F. Supp. 2d at 732 (quoting *Hindo v. University Health Sciences/The Chicago Medical School*, 65 F.3d 608, 613 (7th Cir. 1995) (bracketed text in original); *see also U.S. ex rel. Ubl v. IIF Data Sols.*, 650 F.3d 445, 452 (4th Cir. 2011) (noting the FCA "is not intended to 'punish honest mistakes or incorrect claims submitted through mere negligence.'") Simply put, the mere submission of an erroneous Cost Report does not satisfy the FCA's "knowledge" requirement. *Omnicare*, 745 F.3d at 702. Because Relator has alleged no facts that would show NCBH *knowingly* submitted a false Cost Report, the Court should dismiss the Complaint.

### B. The Court Cannot Infer Fraudulent Intent from Bare Allegations of "Motive" and "Opportunity."

Lacking any direct factual support that NCBH "knowingly" submitted false Cost Reports, Relator urges the Court to rely on "circumstantial evidence" to infer NCBH's intent to commit fraud. (ECF No. 73 at 5-6.) More specifically, Relator argues that motive and opportunity alone can lead to a "strong inference" of fraud and satisfy his burden of alleging CHS "knowingly" submitted false claims. *Id.*[2] Relator is incorrect.

The theory that motive and opportunity alone can give rise to a "strong inference" of fraud to satisfy the FCA's "knowledge" requirement has been rejected by numerous

---

[2] The "strong inference" of fraud is a creature of securities law and can be shown in two ways: a) motive and opportunity or b) alleging facts that constitute strong circumstantial evidence of misbehavior or recklessness. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). Because he has no facts to support his allegation, the Relator argues only that he has satisfied the former (ECF No. 73 at 6).

courts. *See U.S. ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 62 (D.D.C. 2006) ("The presence of a motive cannot substitute for evidence of knowledge and intent"), *aff'd* 530 F.3d 980 (D.C. Cir. 2008); *Cade v. Progressive Community Healthcare, Inc.*, 2011 WL 2837648, n.8 (N.D. Ga. 2011) (refusing to apply the "strong inference" standard from securities case law to an FCA claim).

Even if this Court applied the securities laws' "strong inference" standard, the court must also consider "competing inferences rationally drawn from the facts alleged," including non-fraudulent intent. *Tellabs, Inc. v. Makor Issues & Rights, Inc.*, 551 U.S. 308, 314 (2007). he "inference of scienter" must be as cogent and "at least as compelling" as any opposing inference of non-fraudulent intent to permit the claim to survive a motion to dismiss. *Id.* In the instant case, the competing inference of non-fraudulent intent that can be rationally drawn from the facts alleged and omissions from the complaint is much more compelling than the Relator's claim of fraudulent activity.[3]

NCBH uses MedCost Services as its third-party administrator to handle all of its domestic claims. (ECF No. 62 at ¶28).[4] Pursuant to Medicare Guidelines, an entity that uses a third-party administrator need not reduce its domestic claims to cost, but need only reduce its domestic claims to an amount that is reasonable when compared to prevailing market rates. (*See* Exhibit B to the Declaration of Phil Mohr.) Relator alleges that for the

---

[3] In addition, "omissions and ambiguities [in the complaint can] count against inferring scienter…" *Tellabs*, 551 U.S. at 326 (bracketed text added).

[4] As evidenced by Exhibit A to the Declaration of Phil Mohr, MedCost Services is a recognized third-party administrator by the State of North Carolina.

5

past fourteen (14) years, NCBH has consistently filed its Cost Reports in the same manner, never reducing its domestic claims to cost. (ECF No. 62 ¶¶58, 69). During each of these fourteen years, an independent Medicare fiscal intermediary/contractor has audited NCBH's Cost Reports. (*Id.* at ¶37).

Yet, there are no factual allegations that the independent intermediary/contractor ever contended that NCBH's Cost Reports were in error, even after the *St. Francis Hospital* decision was rendered in 2007. Although NCBH employs over 12,000 people (*id.*, ¶10), there are no factual allegations that any of these employees (including those who were directly involved in preparing the Cost Reports) knew, believed, talked about, complained or even voiced a single concern to anyone (supervisor, government official, etc.) over the past fourteen (14) years that the Cost Reports were purportedly in error.

These facts and omissions present a theory that, at worse, shows that NCBH's Cost Reports contained errors that were unknown to NCBH.[5] This theory is much more cogent and reasonable than the Relator's theory that NCBH knowingly submitted false Cost Reports for the past fourteen (14) years, without the intermediary ever catching on.

Because the Relator has failed to sufficiently allege NCBH knowingly presented false claims over a fourteen year period—a theory which has little cogent support—this Court should dismiss his FCA claims against NCBH with prejudice.

---

[5] These facts and omission would also present another cogent, reasonable, nonfraudulent theory; namely, that the Cost Reports are not inaccurate at all.

6

Case 1:09-cv-00420-WO-LPA Document 76 Filed 06/15/16 Page 7 of 13

## II. THE COMPLAINT DOES NOT STATE A RETALIATION CLAIM.

### A. The Weight of Authority and the Plain Language of § 3730(h) Preclude Vincoli's Retaliation Claim.

Vincoli concedes that "the general rule . . . is that Section 3730(h) does not provide a remedy for post-termination retaliation . . . ." (ECF No. 73 at 22.) The "general rule" is in fact a near-unanimous consensus; one court recently counted 10 of 12 federal district courts as having concluded that post-employment retaliation claims fall outside § 37370(h). *See Fitzsimmons v. Cardiology Assocs. of Fredericksburg*, *Ltd.*, 3:15CV72, 2015 WL 4937461, at *7, n.15 & n.16 (E.D. Va. Aug. 18, 2015) (collecting cases).[6]

Vincoli nonetheless urges the Court to reject the overwhelming weight of authority in favor of a purported "developing line of cases" recognizing a novel claim of "blacklisting" under § 3730(h). Close scrutiny of the cases cited by Vincoli, however, reveals that three of the four decisions in this "developing line" of authority are readily distinguishable. Two of the cases—*Ortino v. Sch. Bd. of Collier Cty.*, No. 2:14–cv–693, 2015 WL 1579460 (M.D. Fla. Apr. 9, 2015) and *Haka v. Lincoln Cty.*, 533 F. Supp. 2d 895 (W.D. Wis. 2008)—both involved an employer's refusal to *re-hire* a terminated

---

[6] Moreover, the two "minority" decisions that the *Fitzsimmons* court cited—*Glynn v. Impact Sci. & Tech., Inc.*, 807 F. Supp. 2d 391, 419 n. 23 (D. Md. 2011) and *Haka v. Lincoln Cty.*, 533 F. Supp. 2d 895 (W.D. Wis. 2008)—do not expressly hold that § 3730(h) permits post-employment retaliation claims. *Glynn* was decided on summary judgment and did not reach the issue of the scope of § 3730(h) and *Haka* dealt with a refusal to rehire a terminated employee. The *Fitzsimmons* court recognized the limited scope of those two cases, noting only that they "found that § 3730(h) *may* contemplate a remedy for post-termination retaliation." *Fitzsimmons*, 2015 WL 4937461, at *7 (E.D. Va. Aug. 18, 2015) (emphasis added).

employee. This case is plainly different, as Vincoli does not allege that NCBH refused to re-hire him, but rather that NCBH caused a third party—the State—to fire him.

*Nguyen v. City of Cleveland*, 121 F. Supp. 2d 643 (N.D. Ohio) is similarly distinguishable. The plaintiff in *Nguyen* filed a *qui tam* suit against his employer, the City of Cleveland. While the *qui tam* suit was under seal, the plaintiff went to work for an engineering company that contracted with the city. After the city learned of the plaintiff's involvement in the *qui tam* suit, it demanded that the contractor remove him from all work and the contractor complied, resulting in his termination. The court held that the *contractor* could be liable under § 3730(h), even though the plaintiff's protected activity occurred while he was employed by the city. *See Nguyen*, 121 F. Supp. 2d at 649 ("The causation requirement in the third prong of this test is sufficiently weak that it reaches an employer who discriminates against an employee, at the behest of or on behalf of another, when it is the other that seeks to retaliate against the employee for protected conduct."). In other words, *Nguyen* stands for the proposition that Mr. Vincoli may sue the *State* for unlawful retaliation under § 3730(h); it does not provide a basis to conclude that he can sue NCBH for the State's actions.

The only case that directly supports Vincoli's position is *U.S. ex rel. Kent v. Aiello*, 836 F. Supp. 720 (E.D. Ca. 1993). Yet, as NCBH explained in its opening brief, that case incorrectly interprets § 3730(h) by analogizing the statute to retaliation claims brought under Title VII. (ECF No. 66 at 17.) Vincoli similarly attempts to bootstrap Title VII jurisprudence onto § 3730(h) to create a new cause of action for "blacklisting." (See

8

ECF No. 73 at 25-26.) At least two other district courts, however, have concluded that Title VII case law does not apply to § 3730(h). *See U.S. ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 208, n. 32 (D.D.C. 2011); *U.S. ex rel. Wright v. Cleo Wallace Centers*, 132 F. Supp. 2d 913, 928 (D. Colo. 2000).

Finally, Vincoli's invocation of a passing reference to "blacklisting" in the legislative history of § 3730(h) cannot change the plain meaning of the statute. In interpreting a statute, the court "must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute." *Ignacio v. U.S.*, 674 F.3d 252, 254 (4th Cir. 2012) (citation omitted). "If the plain language is unambiguous, we need look no further." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015). At least ten courts have concluded that, by its plain terms, § 3730(h) does not extend to post-termination retaliation. Mr. Vincoli offers no compelling reason to conclude otherwise, and the Court may dismiss the retaliation count on that basis alone.[7]

### B. Vincoli's Retaliation Claim is Implausible.

Vincoli claims that "highly suspicious circumstances" surround his termination by the Department of Public Safety ("**DPS**"). (ECF No. 73 at 29.) Those "highly suspicious circumstances," as identified in his opposition brief, consist of the following two facts: (1) a lawyer who once worked for NCBH's outside law firm in this case (a firm that itself employs over 500 attorneys) also worked at DPS at the time of Vincoli's firing and (2) a

---

[7] Moreover, other portions of the legislative history suggest that the statute was limited to *current* employers. *See* 132 Cong. Rec. H9382-03, 9389 (daily ed., Oct. 7, 1986) ("The whistleblower protection section [] is extremely important and is designed to protect the person from any retaliatory action *taken by his employer*.") (emphasis added).

9

State Representative at the time of Vincoli's firing was President of NCBH from 2007 to 2011. (*Id.*) From these two facts, Vincoli asks this Court to infer that, over six years after Vincoli's termination from NCBH and two-and-a-half years after NCBH allegedly learned of this suit, NCBH caused the Governor's office to fire him. Vincoli's conspiracy theory ignores a far simpler and more plausible explanation for his termination by DPS—he is a difficult employee with a pattern of wrongfully accusing his employers of engaging in unethical or illegal conduct.[8]

In a desperate attempt to bolster his retaliation claim, Vincoli also repeatedly mentions an allegation—not included in the Complaint—that an NCBH attorney told Vincoli's former attorney that NCBH would "do everything in its power to make sure he never worked for another hospital in this State again." (ECF No. 73 at 24, n. 44; 28.) Vincoli fails to explain why he neglected to include this allegation in his prior amendments to the Complaint. Even if the Court accepts that allegation as true, it does not support Vincoli's claim, as the alleged threat was that he would never work for "another *hospital*." Vincoli, however, did not to go to work and was not terminated by "another *hospital*;" he was terminated by DPS.

Simply put, Vincoli has not alleged any fact that supports his theory of retaliation, and has not alleged any details from which the Court could plausibly infer that NCBH caused the Governor's office to terminate him from DPS.

---

[8] Vincoli concedes that the statute of limitations bars any claim for retaliation based on NCBH's 2011 lawsuit. (ECF No. 73 at 28.)

10

Case 1:09-cv-00420-WO-LPA   Document 76   Filed 06/15/16   Page 11 of 13

This 15th day of June 2016

        */s/ Brent F. Powell*
Philip J. Mohr, N.C. State Bar #24427
Brent F. Powell, N.C. State Bar #41938
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660

Sandra Miller (by special appearance)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
550 South Main Street
Suite 400
Greenville, SC 29601

*Attorneys for*
*North Carolina Baptist Hospital*

# CERTIFICATE OF SERVICE

  This to certify that on this the 15th day of June, 2016, I electronically filed the foregoing *North Carolina Baptist Hospital's Reply in Support of Its Motion to Dismiss* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Charles H. Rabon, Jr.<br>Rabon Law Firm, PLLC<br>225 E. Worthington Avenue<br>Suite 100<br>Charlotte, NC 28203<br>Telephone: 704-247-3247<br>Fax: 704-208-4645<br>Email: Crabon@usfraudattorneys.com | Wm. Paul Lawrence, II<br>Waters & Kraus, LLP<br>37163 Mountville Road<br>Middleburg, VA 20117<br>Telephone: 540-687-6999<br>Fax: 540-687-5457<br>Email: plawrence@waterskraus.com |
| Marshall P. Walker<br>Rabon Law Firm, PLLC<br>225 E. Worthington Avenue<br>Suite 100<br>Charlotte, NC 28203<br>Telephone: 704-247-3247<br>Fax: 704-208-4645<br>Email: mwalker@usfraudattorneys.com | Kay Gunderson Reeves<br>Waters & Kraus, LLP<br>3219 McKinney Avenue<br>Dallas, TX 75204<br>Telephone: 214-357-6244<br>Fax: 214-357-7252<br>Email: kreeves@waterskraus.com |

               */s/ Brent F. Powell*
              Brent F. Powell, N.C. State Bar #41938

              *Attorney for North Carolina Baptist Hospital*