| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. COMPLIN,<br><br>        Plaintiff/Relator,<br><br>v.<br><br>NORTH CAROLINA BAPTIST HOSPITAL and CAROLINAS HEALTHCARE SYSTEM,<br><br>        Defendants. | C.A. No. 1:09CV420 |

## Carolinas HealthCare System's
## Reply in Support of Its Motion to Dismiss

Philip J. Mohr, N.C. State Bar #24427
Brent F. Powell, N.C. State Bar #41938
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660

Sandra Miller (by special appearance)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
550 South Main Street
Suite 400
Greenville, SC 29601

*Attorneys for Carolinas HealthCare System*

# INTRODUCTION

Relator Complin/Vincoli never worked for Carolinas HealthCare Systems ("CHS"), never prepared CHS's Medicare Cost Reports, and has no personal knowledge of how CHS prepared its Cost Reports. Nonetheless, the Relator invites this Court to break with well-established precedent and allow him to maintain his FCA claim on the simple theory that since CHS was presumed to know the law, if it submitted an inaccurate Cost Report, it must have done so "knowingly." The Court should decline the Relator's invitation and instead dismiss his complaint against CHS.

# ARGUMENT

## I. THE RELATOR FAILS TO SUFFICIENTLY ALLEGE CHS *KNOWINGLY* PRESENTED A FALSE CLAIM.

The Relator asserts claims under 31 U.S.C. §3729(a)(1)(A) and §3729(a)(1)(B). (ECF No. 62 at ¶68.) Under either section, the Relator must prove CHS *knowingly* submitted a false claim. 31 U.S.C. §3729(b)(1). To properly allege "knowledge," the Relator "must set forth specific facts that support an inference of fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted); *see also U.S. ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 583 (E.D. Va. 2010) (in order to survive a motion to dismiss, an FCA complaint "must give sufficient factual support for [the defendant's alleged] knowledge."). Relator fails to provide any such factual support, which is hardly surprising given his complete lack of involvement with CHS. Instead, the Relator asserts that the Court can legally presume CHS acted "knowingly" if either (a) the Cost Reports contain an error or (b)

1

CHS had motive and opportunity. Relator is wrong on both counts, and the Court's acceptance of his novel theories would have large-scale ramifications for all FCA claims.

### A. "Knowledge" Requires More Than Simply Submitting an Erroneous Cost Report.

Although Relator alleges that CHS knew its Cost Reports were false when submitted (ECF No. 62 at ¶¶2, 18, 20, and 65), he alleges no facts—either in the Amended Complaint or in his Response brief—to support this conclusory allegation.[1] Relator makes no allegations, for example, that CHS was ever on notice of the alleged errors in its Cost Reports, that CHS employees had conversations or "bragged about" CHS's alleged wrongdoing, or that "red flags" existed about the purported Cost Report errors. *Compare U.S. ex. rel. Pilecki-Simko v. Chubb Inst.*, C.A. No. 06-3562, 2010 WL 3463307, *6 (D.N.J. Aug. 27, 2010).[2] In short, the Relator has failed to allege any facts—much less those facts typically seen in FCA cases that survive a motion to dismiss—that would support an inference that CHS knowingly submitted fraudulent claims.

---

[1] This failure to identify any facts to support his claim of CHS's knowledge is hardly surprising given that the Relator did not—and could not—allege that he ever worked for CHS, prepared CHS's Cost Reports, or knew who or how CHS prepared its Cost Reports.

[2] In his Response brief, Vincoli attempts to rely on *DeCesare* to support this "presumed knowledge" theory. However, the *DeCesare* relator, unlike Vincoli, had *personal knowledge* about the alleged fraudulent scheme (even having attended a meeting where the scheme was created) and had raised concerns about the illegality at issue with one of the defendants. *DeCesare*, 757 F. Supp. 2d at 579-80. No such factual allegations are present in the instant case.

Left without any facts, the Relator first argues he has satisfied §3729(b)(1)'s "knowledge" requirement because CHS is "presumed to know the law," and therefore any error in the Cost Reports must have been done "knowingly" and intentionally. (ECF No. 73 at 5.) This argument is contrary to well-established FCA case law.

Even assuming that CHS's Cost Reports for the past sixteen (16) years are erroneous (which CHS denies), merely submitting an inaccurate Cost Report does not support an FCA claim. The Relator must also allege—with factual support—that the false claim was submitted with scienter. *U.S. ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 702 (4th Cir. 2014). "[N]either mistaken conduct nor negligence is actionable under the False Claims Act." *U.S. ex rel. Phillips v. Pediatric Services of America, Inc.*, 142 F. Supp. 2d 717, 732 (W.D.N.C. 2001). Rather, "the claim [at issue] must be a lie." *Phillips*, 142 F. Supp. 2d at 732 (quoting *Hindo v. University Health Sciences/The Chicago Medical School*, 65 F.3d 608, 613 (7th Cir. 1995) (bracketed text in original); *see also U.S. ex rel. Ubl v. IIF Data Sols.*, 650 F.3d 445, 452 (4th Cir. 2011) (noting the FCA "is not intended to 'punish honest mistakes or incorrect claims submitted through mere negligence.'") Simply put, the mere submission of an erroneous Cost Report does not satisfy the FCA's "knowledge" requirement. *Omnicare, Inc.*, 745 F.3d at 702. Because Relator has alleged no facts that would show CHS *knowingly* submitted a false Cost Report, the Court should dismiss the Complaint.

### B. The Court Cannot Infer Fraudulent Intent from Bare Allegations of "Motive" and "Opportunity."

Lacking any direct factual support that CHS "knowingly" submitted false Cost Reports, Relator urges the Court to rely on "circumstantial evidence" to infer CHS's intent to commit fraud. (ECF No. 73 at 5-6.)[3] More specifically, Relator argues that motive and opportunity alone can lead to a "strong inference" of fraud and satisfy his burden of alleging CHS "knowingly" submitted false claims. *Id.*[4] Relator is incorrect.

The theory that motive and opportunity alone can give rise to a "strong inference" of fraud is a creature of securities law. *Tellabs, Inc. v. Makor Issues & Rights, Inc.*, 551 U.S. 308 (2007). Relator cites no case where a court has found that motive and opportunity, standing alone, satisfy the FCA's "knowledge" requirement. In fact, numerous courts have specifically rejected that argument. *See U.S. ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 62 (D.D.C. 2006) ("The presence of a motive cannot substitute for evidence of knowledge and intent"), *aff'd* 530 F.3d 980 (D.C. Cir. 2008); *Cade v. Progressive Community Healthcare, Inc.*, 2011 WL 2837648, n.8 (N.D. Ga. 2011) (refusing to apply the "strong inference" standard from securities

---

[3] Circumstantial evidence, by definition, are facts and circumstances which tend to prove the existence of a fact, in this case CHS's intent. 1A Fed. Jury Prac. & Instruc §12.04. Relator has no facts that show CHS's intent and so must rely exclusively on the circumstances of "motive" and "opportunity" to try and satisfy his burden.

[4] There are two ways that a "strong inference" of fraud can be shown in securities cases: a) motive and opportunity; or b) alleging facts that constitute strong circumstantial evidence of misbehavior or recklessness." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). Not surprisingly, the Relator argues only that he has satisfied the former and not the latter. (ECF No. 73 at 6).

case law to an FCA claim). Thus, contrary to the Relator's contention, no FCA case law permits the substitution of vague allegations of "motive and an opportunity" in place of actual facts supporting an inference of knowledge and intent.

Moreover, even if this Court applied the securities laws' "strong inference" standard, the court must also consider "competing inferences rationally drawn from the facts alleged," including non-fraudulent intent. *Tellabs*, 551 U.S. at 314. If and only if the "inference of scienter" is as cogent and "at least as compelling" as any opposing inference of non-fraudulent intent, will the "strong inference" be satisfied and the claim permitted to continue. *Id.* In the instant case, the competing inference of non-fraudulent intent that can be rationally drawn from the facts alleged and omissions from the complaint is much more compelling than the Relator's claim of fraudulent activity.[5]

CHS uses MedCost Services as its third-party administrator to handle all of its domestic claims. (ECF No. 62 at ¶28).[6] Pursuant to Medicare Guidelines, an entity that uses a third-party administrator need not reduce its domestic claims to cost, but need only reduce its domestic claims to an amount that is reasonable when compared to prevailing

---

[5] In addition, "omissions and ambiguities [in the complaint can] count against inferring scienter…" *Tellabs*, 551 U.S. at 326 (bracketed text added).

[6] As evidenced by Exhibit A to the Declaration of Phil Mohr (filed contemporaneously with this brief), MedCost Services is a recognized third-party administrator by the North Carolina Department of Insurance. *See Witthohn v. Federal Insurance Co.*, 164 Fed. Appx. 395, *1 (4th Cir. 2005) (recognizing court can review public documents as part of motion to dismiss).

5

market rates. *See* Exhibit B.[7] For the past sixteen (16) years, the Relator alleges that CHS has consistently filed its Cost Reports in the same manner, never reducing its domestic claims to cost. (*Id.* at ¶¶58,69.) During each of these sixteen years, however, an independent Medicare fiscal intermediary/contractor has reviewed CHS's Cost Reports. (*Id.* at ¶37.) Yet there is no allegation the fiscal intermediary identified any errors in CHS's Costs Reports. All of these facts present a more cogent, realistic, non-fraudulent theory, even if the Court assumes that the Cost Reports are in fact erroneous; e.g., that CHS has consistently, but mistakenly, calculated its Cost Reports for more than a decade, but never knew or had reason to suspect the existence of any errors.

The Relator's omissions from the Amended Complaint further support this competing, non-fraudulent theory. There are no factual allegations that the independent intermediary/contractor ever contended that CHS's Cost Reports were in error, much less fraudulent, even after the *St. Francis Hospital* decision cited in the Amended Complaint was rendered in 2007. Although Relator alleges CHS employs over 60,000 people (*Id.*, ¶11), there is no factual allegation that any of these employees (including those who were directly involved in preparing the Cost Reports) knew, believed, talked about, complained or even voiced a single concern to anyone (supervisor, government official, etc.) over the past sixteen (16) years that the Cost Reports were in error. Finally, there are

---

[7] Relator alleges throughout his complaint that CHS filled out Form 2252 improperly by not reducing its domestic claims to cost. (ECF No. 62, ¶¶37,62 and 69.) However, the Instructions provided for completing CMS Form 2552 explaining that when an entity like CHS has a TPA, domestic claims need only be *discounted* from full charges, not completely reduced to cost. (*See* Exhibit B to Declaration of Phil Mohr.)

6

Case 1:09-cv-00420-WO-LPA   Document 77   Filed 06/15/16   Page 7 of 13

market rates. *See* Exhibit B.[7] For the past sixteen (16) years, the Relator alleges that CHS has consistently filed its Cost Reports in the same manner, never reducing its domestic claims to cost. (*Id.* at ¶¶58,69.) During each of these sixteen years, however, an independent Medicare fiscal intermediary/contractor has reviewed CHS's Cost Reports. (*Id.* at ¶37.) Yet there is no allegation the fiscal intermediary identified any errors in CHS's Costs Reports. All of these facts present a more cogent, realistic, non-fraudulent theory, even if the Court assumes that the Cost Reports are in fact erroneous; e.g., that CHS has consistently, but mistakenly, calculated its Cost Reports for more than a decade, but never knew or had reason to suspect the existence of any errors.

The Relator's omissions from the Amended Complaint further support this competing, non-fraudulent theory. There are no factual allegations that the independent intermediary/contractor ever contended that CHS's Cost Reports were in error, much less fraudulent, even after the *St. Francis Hospital* decision cited in the Amended Complaint was rendered in 2007. Although Relator alleges CHS employs over 60,000 people (*Id.*, ¶11), there is no factual allegation that any of these employees (including those who were directly involved in preparing the Cost Reports) knew, believed, talked about, complained or even voiced a single concern to anyone (supervisor, government official, etc.) over the past sixteen (16) years that the Cost Reports were in error. Finally, there are

---

[7] Relator alleges throughout his complaint that CHS filled out Form 2252 improperly by not reducing its domestic claims to cost. (ECF No. 62, ¶¶37,62 and 69.) However, the Instructions provided for completing CMS Form 2552 explaining that when an entity like CHS has a TPA, domestic claims need only be *discounted* from full charges, not completely reduced to cost. (*See* Exhibit B to Declaration of Phil Mohr.)

no allegations that "red flags" existed about the purported Cost Report errors that would have or should have put CHS on notice, even after the *St. Francis Hospital* decision. *Pilecki-Simko*, 2010 WL 3463307 at 6.

These facts and omissions present a theory that, at worse, shows that CHS's Cost Reports contained errors that were unknown to CHS.[8] This theory is much more cogent and reasonable than the Relator's theory that CHS has knowingly and fraudulently been submitting false Cost Reports to the government for the past sixteen (16) years, without the independent intermediary/contractor discovering its nefarious conspiracy.

    C.    **Relator's Allegations of Knowledge Lack Any Reliability and Should Not Be Allowed To Continue.**

The FCA's purpose is to prevent fraud on the government. *Omnicare*, 745 F.3d at 700. Unlike other types of litigation, the FCA does not permit initial allegations of fraudulent activity to be made "upon information and belief" and then buttressed through subsequent discovery.[9] *See Wilson*, 525 F.3d at 379 ("[I]f allowed to go forward,

---

[8] These facts and omission would also present another cogent, reasonable, nonfraudulent theory; namely, that the Cost Reports are not inaccurate at all.

[9] Relator cites *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220 (1st Cir. 2004) for the proposition that: a) a relaxed standard for the "knowledge" requirement can be applied; and b) that he should be permitted to conduct "some discovery before requiring that plaintiff plead individuals acts of fraud with particularity." (ECF No. 73 at 3, n.1.) Relator is wrong on both counts. First, the Fourth Circuit has not adopted this relaxed standard. *See Harrison v. Westinghouse Savanah River Co.*, 176 F.3d. 776, 783-84 (4th Cir. 1999). Second, the *Karvelas* case quotes from a case, dealing with an indemnity claim, that was subsequently overruled. *Karvelas*, 360 F.2d at 229, *citing Boston & Marine Corp. v. Town of Hampton*, 987 F.2d 855 (1st Cir. 1993), *overruled by Educardores Puertorriquenos En Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004). Even

7

Relators' FCA claim would have to rest primarily on facts learned through the costly process of discovery. This is precisely what Rule 9(b) seeks to prevent."). Instead, the FCA requires the Relator make initial factual allegations that have some reliability to support a claim that the defendant acted with scienter. *U.S. ex rel. Garzione v. PAE Government Services, Inc.*, 2016 WL 775780, *7 (E.D. VA. Feb. 25, 2016) (dismissing FCA claim on the basis that the relator failed to allege "facts that make plausible his claims that [the defendant] knew that its submitted [claims were erroneous]."). This indicia of reliability is particular important where, as here, the Relator is an outsider to the organization. *See U.S. ex rel. Customs Fraud Invest., LLC v. Victaulic Co.*, No. 13-2983, 2015 WL 1608455, *18 (E.D. Pa. Apr. 10, 2015) ("[A]ny outside investigation into a private company's fraud must, in accordance with Rule 9(b), supply the Court with a level of reliable information that strongly supports an inference a FCA violation has occurred"). In the instant case, the Relator's conclusory allegation that CHS knew its Cost Reports were false completely lacks any "indicia of reliability."

In addition to having no involvement with CHS or its Cost Reports, Relator's sole connection to CHS was being employed for approximately fifteen (15) months at another hospital that, together with CHS, jointly owned MedCost. (ECF No. 62 at ¶8). Yet, there is no allegation that the Realtor was involved in preparing that hospital's Cost Reports. Rather, the Relator merely worked in the other hospital's patient financial services

---

if the *Karvelas* quotation is still good law in the First Circuit, it is contrary to the Fourth Circuit's holding in *Wilson*, 52 F.3d at 379

department. *Id*. Finally, there is no allegation that the Relator has ever even prepared a Medicare Cost Report for any organization. Despite this total lack of involvement with CHS or preparing Cost Reports, the Relator contends his FCA claims should be allowed to proceed solely on the basis of what he believes he uncovered after "carefully exam[ining]" the Cost Reports, (ECF No. 62 at ¶69), even though he admits that there is nothing in CHS's Cost Reports that give the appearance of fraud. (ECF No. 73 at 19).

Allowing Relator's claim to proceed on the basis of little more than speculation and innuendo would have significant ramifications. If the Court permits the Relator to infer scienter simply by asserting that CHS's Cost Reports were prepared in a way that—according to the Relator's interpretation of various Medicare regulations[10]—are erroneous, then nothing would prevent this Relator from taking the same theory he has espoused in this case and asserting similar FCA lawsuits against other hospitals with self-funded plans throughout the country. The fact that he never worked for those hospitals, knows nothing about how those hospitals prepared their Cost Reports, has no evidence

---

[10] Relator's FCA claims are based entirely upon his own interpretation of various Medicare regulations (ECF No. 62 at ¶¶13-17, 19-20), how those regulations must be read in combination with one another (*id*. at ¶¶26-30), how the 2007 *St. Francis Hospital* decision from the non-binding Medicare Provider Reimbursement Review Board supposedly affected the interpretation of these regulations (*id*. at ¶¶12, 38) and how all of these combine in a way that not only supposedly imparts liability on CHS (*id*. at ¶¶39-46, 69) but gives the outward appearance that the Cost Reports are completely legitimate. (ECF No. 73 at 19). But to satisfy the first element of an FCA claim, the statement must represent an "objective falsehood." *See Wilson*, 525 F.3d at 376. ("[I]mprecise statements or differences in interpretation growing out of a disputed legal questions are similarly not false under the FCA," quoting *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999). In the instant case, Relator's tortured reading of the Medicare regulations to try and imply an FCA claim does not involve an "objective falsehood."

9

that anyone at the hospitals believed they prepared the Cost Reports erroneously, has no experience preparing Cost Reports, and does not have the slightest evidence that those hospitals *knowingly* submitted erroneous Cost Reports would be of no moment. He would be able to satisfy the "knowledge" requirement simply by asserting that the other hospitals' knowledge can be inferred either because they were presumed to have known the law or they had motive and opportunity to commit fraud. Relator's allegation of CHS's knowledge in this case has no greater indicia of reliability than his allegations of knowledge against the other hospitals in his other yet-to-be filed FCA lawsuits.[11] Respectfully, the Court cannot allow this to happen.

## CONCLUSION

The FCA and case law interpreting it are clear; the Relator must provide factual support that CHS submitted Cost Reports that it *knew* were false, and such facts must have an indicia of reliability. In this case, the Relator has presented no such facts. Moreover, case law has expressly rejected the type of inference the Relator seeks. The Court should grant CHS's motion and dismiss the Relator's claim with prejudice.

---

[11] CHS's claim of what this Relator intends to do should his claims in this case be permitted to continue is not without support. By way of example, the Relator alleges that Exhibit A to his complaint lists entities using MedCost for the various years listed, thereby contributing to the "$1 billion of overstated costs." (ECF No. 62 at ¶22.) This allegation is void of any indicia of reliability, a fact that CHS will prove if discovery is required.

10

Case 1:09-cv-00420-WO-LPA Document 77 Filed 06/15/16 Page 11 of 13

This 15th day of June 2016

           */s/ Brent F. Powell*
Philip J. Mohr, N.C. State Bar #24427
Brent F. Powell, N.C. State Bar #41938
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660

Sandra Miller (by special appearance)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
550 South Main Street
Suite 400
Greenville, SC 29601

*Attorneys for Carolinas HealthCare System*

11

Case 1:09-cv-00420-WO-LPA   Document 77   Filed 06/15/16   Page 12 of 13

# CERTIFICATE OF SERVICE

This to certify that on this the 15th day of June, 2016, I electronically filed the foregoing *Carolinas HealthCare System's Reply in Support of Its Motion to Dismiss* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Charles H. Rabon, Jr.
Rabon Law Firm, PLLC
225 E. Worthington Avenue
Suite 100
Charlotte, NC 28203
Telephone: 704-247-3247
Fax: 704-208-4645
Email: Crabon@usfraudattorneys.com

Wm. Paul Lawrence, II
Waters & Kraus, LLP
37163 Mountville Road
Middleburg, VA 20117
Telephone: 540-687-6999
Fax: 540-687-5457
Email: plawrence@waterskraus.com

Marshall P. Walker
Rabon Law Firm, PLLC
225 E. Worthington Avenue
Suite 100
Charlotte, NC 28203
Telephone: 704-247-3247
Fax: 704-208-4645
Email: mwalker@usfraudattorneys.com

Kay Gunderson Reeves
Waters & Kraus, LLP
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214-357-6244
Fax: 214-357-7252
Email: kreeves@waterskraus.com

      */s/ Brent F. Powell*
Brent F. Powell, N.C. State Bar #41938

*Attorney for Carolinas HealthCare System*