IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,        )
ex rel. COMPLIN,                 )
                                 )
            Plaintiff,           )
                                 )
     v.                          )        1:09CV420
                                 )
NORTH CAROLINA BAPTIST HOSPITAL  )
and THE CHARLOTTE-MECKLENBURG     )
HOSPITAL AUTHORITY, d/b/a        )
Carolinas Healthcare System,     )
                                 )
            Defendants.          )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter is before the court for review of the
Memorandum Opinion and Recommendation (the "Recommendation")
filed on December 28, 2016, by Magistrate Judge L. Patrick Auld,
(Doc. 83), in accordance with 28 U.S.C. § 636(b)(1), Fed. R.
Civ. P. 72(b), and Local Rule 72.1(a). The Recommendation
addressed the motions to dismiss filed by Defendant North
Carolina Baptist Hospital ("NCBH"), (Doc. 64), and Defendant The
Charlotte-Mecklenburg Hospital Authority, doing business as
Carolinas Healthcare System ("CHS"), (Doc. 67). In the
Recommendation, the Magistrate Judge recommended that each
Defendant's motion to dismiss be granted and that Plaintiff/

Relator's ("Relator") Second Amended Complaint, (Doc. 62), be dismissed with prejudice. Relator objected to the Recommendation, (Doc. 86); Defendants responded, (Docs. 89, 90), and Relator replied, (Docs. 101, 102). For the reasons set forth herein, this court will adopt the Recommendation and will overrule Relator's objections to the Recommendation. Relator's Second Amended Complaint should be and will be dismissed with prejudice.

## I.   <u>PROCEDURAL HISTORY</u>

Relator initiated this case over nine years ago. On June 11, 2009, Relator filed under seal his original <u>qui tam</u> Complaint in this matter, alleging violations of the federal False Claims Act ("FCA"), 31 U.S.C. § 3279 <u>et seq.</u>, by Defendant NCBH and one of Defendant CHS's facilities, Carolinas Medical Center. (Complaint (Doc. 1).) On July 26, 2010, Relator filed his First Amended Complaint under seal, adding claims under North Carolina's FCA, N.C. Gen Stat. § 1-605 <u>et seq</u>. (Amended Complaint (Doc. 16).) The case remained under seal for several years following numerous orders issued by Magistrate Judge Wallace W. Dixon, and then Magistrate Judge Auld, granting numerous motions by the United States for an extension of time to decide whether to intervene. (<u>E.g.</u>, Docs. 26, 29, 38.) On August 14, 2015, the United States declined to intervene. (Doc.

48.) Shortly thereafter, on August 27, 2015, Magistrate Judge Auld ordered the case unsealed and ordered Relator to serve the then-operative Complaint on Defendants. (Doc. 49.) Counsel for Defendants waived service. (Docs. 57, 58.)

On February 4, 2016, Relator filed the Second Amended Complaint, (Doc. 62), which is the subject of the Magistrate Judge's Recommendation. (Relator revealed in the Second Amended Complaint that Complin, a Delaware general partnership, was the nominal plaintiff in this case and that Joseph H. Vincoli was the real plaintiff/relator, (Second Amended Complaint ("Second Am. Compl.") (Doc. 62) ¶ 7); this court uses Relator to refer to Vincoli.) In the Second Amended Complaint, Relator alleged under Count One that Defendants NCBH and the Charlotte-Mecklenburg Hospital Authority, d/b/a/ Carolinas Healthcare System (CHS), violated the federal FCA through a complex Medicare reimbursement scheme whereby Defendants presented false or fraudulent claims for payment to the United States that overstated the cost of health care provided to their own employees under Defendants' self-funded health benefit plans. (See id. ¶¶ 2, 101-06.) Under Counts Two and Three, Relator brought retaliation claims under the federal (Count Two) and North Carolina (Count Three) FCAs against Defendant NCBH, Relator's former employer. (Id. ¶¶ 8, 107-20.)

On April 8, 2016, Defendant NCBH moved to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. 64.) As to Count One, NCBH argued that: (i) Relator's claims were barred by a signed release; (ii) Relator failed to sufficiently allege scienter under the federal FCA; and (iii) the Second Amended Complaint failed to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). (See Docs. 64-66.) As to Counts Two and Three, NCBH argued that Relator could not recover for retaliatory actions by NCBH that allegedly occurred after the termination of his employment with NCBH and that Relator nevertheless failed to allege a plausible retaliation claim. (See id.) Defendant CHS likewise moved to dismiss for failure to state a claim, making similar arguments as to Count One. (See Docs. 67, 68.) Relator responded to both motions in a consolidated memorandum, (Doc. 73), and both Defendants replied, (Docs. 76; Doc. 77). Pursuant to Magistrate Judge Auld's order, (see Text Order dated July 12, 2016), Relator submitted a consolidated sur-reply, (Doc. 81).

On December 28, 2016, Magistrate Judge Auld issued his Recommendation, (Doc. 83), in which he recommended that this court grant Defendants' motions to dismiss and dismiss the Second Amended Complaint with prejudice, (id. at 1, 78). The Magistrate Judge then granted Relator's motion for an extension

of time to respond to the Recommendation, (Text Order dated
Jan. 10, 2017), and Relator timely objected on January 18, 2017
(the "Objections"), (Obj. (Doc. 86); Declaration of Charles H.
Rabon, Jr. in Supp. of Obj. ("Rabon Decl."), Ex. A (Doc. 87-1)).
Both Defendants responded. (Def. NCBH's Resp. to Pl.'s Obj.
("NCBH's Resp.") (Doc. 89); Def. CHS's Resp. to Pl.'s Obj.
("CHS's Resp.") (Doc. 90).) By two separate orders on
September 13, 2017, this court (i) permitted Relator to reply to
newly-raised matters in Defendants' responses, (Doc. 99), and
(ii) denied Relator's motion to strike the documents attached to
Defendants' responses or in the alternative for an extension of
time to conduct discovery, (Doc. 100). On September 18, 2017,
Relator replied separately to each Defendant's response to
Relator's Objections. (Pl.'s Reply to CHS's Resp. (Doc. 101);
Pl.'s Reply to NCBH's Resp. (Doc. 102).)

## II.  __THE RECOMMENDATION AND RELATOR'S OBJECTIONS__

Given the procedural posture of this case, this court will
only summarize the Recommendation and Objections.

### A.  __The Magistrate Judge's Recommendation__

As an initial matter, in connection with his termination
from NCBH, Relator and NCBH entered into a Settlement and Mutual
Release Agreement effective on either May 28, 2008 or May 30,
2008. (Recommendation (Doc. 83) at 17-18; Declaration of

Philip J. Mohr in Supp. of NCBH's Mot. to Dismiss ("Mohr Decl."), Ex. 1 (Doc. 65-1).) The Magistrate Judge recommended that all claims arising before May 30, 2008, be dismissed pursuant to that settlement agreement. (Recommendation (Doc. 83) at 17-18.) Relatedly, the Magistrate Judge recommended dismissing as time-barred Relator's retaliation claims against NCBH to the extent Relator seeks recovery from NCBH in connection with a lawsuit NCBH filed against Relator in January 2011 for allegedly breaching the May 2008 settlement agreement. (Id. at 18-19; see also Second Am. Compl. (Doc. 62) ¶ 88.)

The Magistrate Judge recommended that this court reject Defendants' arguments that Relator failed to identify with sufficient particularity those individuals who perpetrated the alleged fraud. (Recommendation (Doc. 83) at 34); see also Fed. R. Civ. P. 9(b). Similarly, the Magistrate Judge rejected Defendants' arguments that, because Relator had no actual and personal knowledge of the alleged fraud, Relator's Second Amended Complaint was not plausible and reliable as required by Fed. R. Civ. P. 9(b). (Recommendation (Doc. 83) at 36-38 ("[I]n the absence of an original source requirement . . . neither the FCA nor Rule 9(b) mandates that a relator possess personal knowledge of the alleged fraud.").) Notwithstanding Relator's short term of employment at NCBH and the fact that Relator was

never employed by CHS, Relator knew of the alleged self-dealing relationship between Defendants and the entity they purportedly co-own, MedCost Benefit Services, LLC ("MedCost"); he had reviewed publicly available Medicare cost reports; and he attached to the Second Amended Complaint a spreadsheet indicating the particulars of the allegedly fraudulent submissions – which included the approximate submission dates and alleged overstatements for numerous claims. (Id. at 34-38; Second Am. Compl., Ex. A (Doc. 62-1).)

The Magistrate Judge, however, found that Relator failed to plausibly allege the requisite scienter by Defendants to survive a motion to dismiss in a FCA case. (Recommendation (Doc. 83) at 53-54.) The Magistrate Judge rejected Relator's argument that circumstantial evidence permitted an inference of scienter. (See id. at 39); see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (citation and internal quotation marks omitted) ("[A]n FCA plaintiff . . . must set forth specific facts that support an inference of fraud."). The Magistrate Judge found – on several different and alternative grounds – that Relator failed to sufficiently allege Defendants' knowledge in the FCA context.

First, Relator could not establish scienter by alleging that the NCBH and CHS officials who certified the Medicare Cost

Reports (the allegedly false claims) indicated "familiarity with the laws and regulations regarding the provision of health care services" when in fact they were either unaware of or recklessly disregarded the Provider Reimbursement Review Board's (non-binding and non-precedential) decision in St. Francis Hosp. Greenville v. Blue Cross Blue Shield Ass'n/Palmetto Gov't Benefits Adm'rs, Case No. 04-1774, 2007 WL 1774634 (P.R.R.B. Apr. 19, 2007). (Recommendation (Doc. 83) at 41-42.)

Second, the Magistrate Judge declined to infer scienter from Defendants' motive and opportunity to defraud the United States – an argument Relator took from the securities litigation context and attempted to adapt to the qui tam context. (Id. at 42-43 (citing United States ex rel. K&R Ltd. P'Ship v. Mass. Hous. Fin. Agency, 456 F. Supp. 2d 46, 62 (D.D.C. 2006), aff'd, 530 F.3d 980 (D.C. Cir. 2008)).)

Third, the Magistrate Judge rejected Relator's argument that the complexity of the structure of Defendants' self-funded employee benefit plans was itself evidence of an intent to hide the fraud. (Recommendation (Doc. 83) at 43-44.) The Magistrate Judge found that MedCost performed legitimate functions in relation to the benefit plans. (Id. at 44-45.) Further, there were no allegations that the NCBH and CHS employees who allegedly falsely certified the Medicare Cost Reports either had

any involvement in establishing MedCost or were aware that MedCost might not have been a third-party administrator under the plans, which was crucial to Relator's fraud theory. (See id. at 45.)

Fourth, Relator argued that sophisticated institutions like Defendants could not have innocently or mistakenly claimed "a billion dollars in fictitious costs." (Id. at 46 (quoting Pl.'s Mem. in Opp'n to Mots. to Dismiss (Doc. 73) at 6); see also Second Am. Compl. (Doc. 62) ¶ 1.) The Magistrate Judge found that whether those costs were fictitious was a legal determination. (Recommendation (Doc. 83) at 46 (certain citations omitted) (citing United States ex rel. Rostholder v. Omnicare, Inc., 745 F.3d 694, 700 (4th Cir. 2014)).) Neither the Magistrate Judge nor this court are bound by Relator's characterization of the costs as fictitious. (Recommendation (Doc. 83) at 47 (citing United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 455 (4th Cir. 2013)).) The Magistrate Judge stated that, even assuming arguendo the costs were fictitious, the court would not infer that Defendants acted knowingly based on that fact alone because the Medicare rules were so complex and ambiguous. (See Recommendation (Doc. 83) at 47-48 ("[T]he relevant Medicare rules and regulations do not, by

themselves, compel an inference that the [defendants] failed to act 'innocently' in claiming the allegedly fictitious costs.").)

The Magistrate Judge summarized the relevant Centers for Medicare and Medicaid Services ("CMS") instructions that specify what costs hospitals with self-funded employee benefit plans may claim for reimbursement. (Id. at 49.) He described what costs those plans with a third-party administrator may claim and what costs those without a third-party administrator may claim. (Id.) Hospitals with self-funded plans that do not have a third-party administrator may claim as allowable costs "the costs the hospital incurs in providing services under the plan to its employees and the hospital's payment to unrelated health care providers for services rendered . . . ." (Id. (quoting Medicare Provider Reimbursement Manual ("MPRM"), Part II, § 4005.02, at 40-62).) Relator argued that Defendants' self-funded plans had no third-party administrator and that Defendants improperly claimed amounts paid by MedCost – which was owned by Defendants and thus not an "unrelated health care provider" – to them for domestic care claims under the self-funded plans. Whether or not those payments were proper appears to depend on MedCost's status as a third-party administrator. If MedCost was not a third-party administrator, as Relator argued, then the allowable costs should have been reduced because MedCost and Defendants are

related parties. The Magistrate Judge found, however, that CMS provided no specific criteria to govern how an entity is qualified or categorized as a third-party administrator. (Recommendation (Doc. 83) at 49 (citing MPRM Part II, § 4005.02, at 40-62).) Further, in responding to Relator's argument that MedCost was not a true third-party administrator, the Magistrate Judge noted that, according to a North Carolina Department of Insurance Third Party Administrator Directory provided by NCBH, (Mohr Decl. in Supp. of Defs.' Mot. to Dismiss, Ex. A (Doc 78-1) at 24), MedCost was a licensed third-party administrator in North Carolina, (Recommendation (Doc. 83) at 50).

The Magistrate Judge agreed that MedCost was likely a related party for purposes of the related-party rule. (See id. at 51.) That rule is applicable to those self-funded plans without a third-party administrator.[1] It specifies that the "costs applicable to services, facilities, and supplies furnished" to Defendants by a related party can be reimbursed at the cost to the related party but that cost must not exceed the comparable market cost of such services, facilities, or supplies. (Recommendation (Doc. 83) at 51 (quoting 42 C.F.R.

---

[1] Relator makes this assertion repeatedly in his Objections and related memoranda. (See, e.g., Obj. (Doc. 86) at 5 ("The first prong of Section 4005 requires a hospital without a [third-party administrator] to observe the related-party rule.").)

§ 413.17(a)).) The Magistrate Judge suggested, however, that the domestic care costs at issue here did not arise from "services, facilities, [or] supplies" furnished by MedCost. (Recommendation (Doc. 83) at 51.) The Magistrate Judge also found that certain CMS guidance relied upon by Relator, i.e., MPRM, Part I, §§ 332.1 and 2144.4, "lack[ed] clear applicability" to Defendants' allowable-cost determinations. (Id. at 51-52.) Finally, the Magistrate Judge reiterated that, because the Provider Reimbursement Review Board's decision in St. Francis Hospital had "no precedential weight," even if Defendants' certifying employees knew of that decision, it would not trump the relevant Medicare rules and regulations that the Magistrate Judge found did not compel an inference that Defendants acted knowingly. (Id. at 52-53.)

All of these factors contributed to the Magistrate Judge's finding that the Second Amended Complaint failed to adequately plead scienter. The Magistrate Judge also found that none of Relator's proposed amendments, which Relator requested leave to file, (see Pl.'s Mem. in Opp'n to Mots. to Dismiss (Doc. 73) at 30), plausibly alleged that Defendants knowingly submitted false claims to the United States, (Recommendation (Doc. 83) at 57).

As to the retaliation claims, the Magistrate Judge declined to determine if 31 U.S.C. § 3730(h) and its North Carolina

analog, N.C. Gen. Stat. § 1-613, applied to the alleged post-employment retaliation here. (Id. at 60.) Even assuming arguendo that either or both of the statutes applied, Relator failed to plausibly allege that Defendant NCBH caused the adverse employment action – which was not even taken by NCBH. (Id.) The Magistrate Judge credited Defendant NCBH's argument that Relator failed to sufficiently allege any link between Relator's termination from the North Carolina Department of Public Safety and NCBH, let alone a link to NCBH's specific knowledge that Relator had initiated this qui tam proceeding. (Id. at 62.) The temporal distance between the protected lawful act and the allegedly adverse employment event was too great to establish causation. (See id. (collecting cases).) The Magistrate Judge found that NCBH became aware of Relator's qui tam action in June 2011, Relator's employment status was reclassified in October 2013, and he was terminated in December 2013. (Id. at 63.) The more than two-year gap between NCBH's knowledge of Relator's lawful act of initiating the qui tam suit and the alleged retaliatory action suggested no causality between the former and latter events. (Id. at 63-64.)

The Magistrate Judge similarly found no allegations linking Representative Donny Lambeth to Relator's firing. (Id. at 64.) Assuming arguendo that such allegations existed, Relator did not

plausibly allege that Representative Lambeth's actions were attributable to NCBH generally or to NCBH's knowledge of this _qui tam_ action specifically. (_Id._) Relator's proposed amendments did not cure these deficiencies. (_Id._ at 66.)

The Magistrate Judge likewise found that any alleged retaliation connected to Relator's reports to the North Carolina State Health Plan of an alleged $1.34 million overpayment to NCBH by the North Carolina State Health Plan were too temporally distant to allow the Magistrate Judge to infer causation. (_Id._ at 67-68.) Further, because the state of North Carolina determined in 2011 that it lacked legal recourse against NCBH regarding the alleged overpayment, Relator's actions after that date did not constitute protected activity because those actions could not reasonably "lead to a viable FCA action" in the future. (_Id._ at 69 (quoting _Eberhardt v. Integrated Design & Constr., Inc._, 167 F.3d 861, 869 (4th Cir. 1999).)

Finally, the Magistrate Judge reiterated that Relator's proposed amendments were futile, found that certain of Relator's requests for leave to amend were procedurally unsound, and found that Relator otherwise failed to satisfy the requirements for leave to amend. (Recommendation (Doc. 83) at 71-77.)

**B.   Relator's Objections**[2]

Relator uses a significant portion of his Objections (and later memoranda) to argue that the Recommendation is fundamentally flawed because it is based on the Magistrate Judge's finding that MedCost was a third-party administrator under Defendants' self-funded employee benefit plans and MPRM § 4005. (See, e.g., Obj. (Doc. 86) at 1.) Relator argues that the Magistrate Judge was, and this court is, required to accept as true Relator's well-pled allegation that NCBH designated itself, and not MedCost, as the Plan Administrator. (Id. at 1-2.)

Relator directs the court to a Plan Supervisor Administrative Services Agreement ("ASA") between NCBH and MedCost dated January 1, 2002, which is quoted in the Second Amended Complaint, (Second Am. Compl. (Doc. 62) ¶ 29 & n.5), and attached to his Objections, (Rabon Decl., Ex. A (ASA) (Doc. 87-1)). In the ASA, NCBH allegedly designated itself, and not MedCost, as the Plan Administrator. (Obj. (Doc. 86) at 2.) MedCost is allegedly designated as the Plan Supervisor in this agreement. (Id. (citing ASA (Doc. 87-1) §§ 1.01, 2.01, 4.01, 7.01).) Relator argues that the contractual relationship between

_____

[2] This court notes Relator's renewed request for oral argument, (Obj. (Doc. 86) at 20 n.13), but finds oral argument unnecessary for the court's disposition of this case.

MedCost and Defendants defines the roles of, and relationship between, the parties, not only for purposes of the self-funded plans themselves, but also more generally under the Employee Retirement Income Security Act (ERISA), which governs the self-funded plans. (See id. at 2-3 & n.1.) Relator argues, therefore, that the Magistrate Judge should not have relied on the North Carolina Department of Insurance Third Party Administrator Directory's classification of MedCost as a third-party administrator. (Id. at 5.)

Relator argues that the Magistrate Judge's finding that MedCost is a third-party administrator was a fundamental error. (See id. at 4.) If Defendants' self-funded employee benefit plans have a third-party administrator, then, under MPRM § 4005, they are exempt "from the strictures of the related-party rule [, 42 C.F.R. § 413.17(a)]." (Id.) The related-party rule "ordinarily requires a hospital [i.e., Defendants] contracting with a related party [i.e., MedCost (or themselves)] to report the costs incurred by the related organization rather than the amounts purportedly charged in the related-party transaction." (Id.) According to Relator, because MPRM § 4005 requires "hospital[s] without a [third-party administrator] to observe the related-party rule . . . [and] exempts hospitals with a [third-party administrator] from the related-party rule," the

alleged scheme depends on whether MedCost is a third-party administrator. (See id. at 5.) Relator argues that MedCost is not a third-party administrator pursuant to the ASA and could not otherwise be a third-party administrator because, as an entity co-owned by Defendants, it is not a true third-party. (See id. at 5; see also Second Am. Compl. ¶ 29 n.5 ("[MedCost] does not enjoy that degree of independence from oversight, direction and control that would be required to make it a 'third party.'").) And if Defendants themselves are the plans' administrators, as the ASA suggests, they of course cannot be third-party administrators to themselves. (Obj. (Doc. 86) at 5.)

Relator also argues that the Magistrate Judge erred in finding that the related-party rule is inapplicable to the relevant transactions. (Id. at 6-7.) This objection is derivative of Relator's objection to the Magistrate Judge's finding (as Relator sees it) that MedCost was a third-party administrator. Relator recognizes as much: "While the use of a [third-party administrator] precludes application of this rule, MedCost did not serve that function in this case." (Id. at 7.) Relator takes issue with the Magistrate Judge's finding that, assuming MedCost was a related party (which seems clear), the related-party rule does not apply here because MedCost did not provide any "'services, facilities, [or] supplies'" to the

hospital, but rather performed only ministerial duties. (Id. (quoting Recommendation (Doc. 83) at 51).) Relator asserts that the issue is not whether MedCost was the party providing services, facilities, or supplies for purposes of the related-party rule, but whether the Defendants themselves were, a question which the Magistrate Judge never analyzed. (Id. at 7-8.)

As to the Magistrate Judge's finding that Relator did not plausibly allege scienter, Relator further argues that the Magistrate Judge incorrectly found that Relator was required to "allege and prove that the individuals who certified the cost reports" were involved in establishing MedCost and its relationship with Defendants and were aware that MedCost failed to qualify as a third-party administrator. (Id. at 9-10 (citing United States ex rel. Harrison v. Westinghouse Savannah River Co., 352 F.3d 908, 918-20 (4th Cir. 2003)).) Relying on Harrison, Relator argues that the FCA scienter requirement can be met if any employee knew of facts that made a certification false. (Obj. (Doc. 86) at 10-11.) As an example, Relator asserts that, because NCBH President and CEO Len Preslar signed the ASA, he "therefore knew the facts that made false the hospital's certification of its cost reports." (Id. at 11.) Relator acknowledges the Magistrate Judge's correct statement of the law

that a good faith claimant does not knowingly present a false claim "where there are legitimate grounds for disagreement over the scope" of the regulatory provisions. (Id. at 12 (citing Recommendation (Doc. 83) at 16, 47 n.22, 53).) But Relator argues that the "knowingly" inquiry is an evidentiary issue that should not be decided at the motion to dismiss stage. (See Obj. (Doc. 86) at 12.)

As to the retaliation findings, Relator argues that from June 2011 to August 2013, he could only be fired for good cause and his position could not be reclassified. (Id. at 18.) In August 2013, North Carolina enacted legislation that allegedly removed those barriers to Relator's termination. (See id. at 18-19.) Therefore, Relator argues that the relevant period for the causation analysis is only the two-month window from August 2013 to October 2013. (See id. at 19.)

Finally, Relator suggests that the Magistrate Judge improperly viewed the United States' non-intervention in this case as "implying that CMS did not believe the related-party issue was meritorious." (Id. at 14-15.) And Relator takes issue with the Magistrate Judge's suggestion that Relator filed the Second Amended Complaint in bad faith. (Id. at 16.)

Defendant NCBH responds to Relator's Objections by arguing that Relator's interpretation of the ASA, and specifically

Relator's assertion that the self-funded plan has no third-party administrator because NCBH is identified in the ASA as the plan's "administrator," is contradicted by other documents related to NCBH's self-funded employee benefits plan. (NCBH's Resp. (Doc. 89) at 1.) Specifically, NCBH argues that the General Plan Information sheets of the Summary Plan Description ("SPD") documents, which both NCBH and CHS attached to their responses, identify MedCost as the third-party administrator. (Id. at 7-9; Declaration of Philip J. Mohr & Ex. A ("NCBH SPDs"), (Doc. 89-1); CHS's Resp., Declaration of Philip J. Mohr & Ex. A ("CHS SPDs"), (Doc. 90-1).) Further, NCBH argues that Relator "confuses the term 'administrator' under ERISA with the term 'third party administrator' under Medicare. (NCBH's Resp. (Doc. 89) at 6 (citation omitted).) NCBH asserts that the SPDs identify NCBH as the Plan Administrator for ERISA purposes and MedCost as the Third-Party Administrator. (Id. at 8; NCBH SPDs (Doc. 89-1).) NCBH argues, therefore, that MedCost was in fact the third-party administrator, (NCBH's Resp. (Doc. 89) at 9), that recipients of the plan's summary description documents would have known that, (id.), and most importantly, that Relator did not allege that NCBH knew that it had not employed (according to Relator) a third-party administrator, (id. at 14-15). NCBH asserts that the ASA itself supports those contentions

because it provides that the Plan Supervisor, i.e., MedCost, "shall use the care and reasonable diligence of similarly situated third party administrators in accordance with industry standards and in the exercise of its powers and performance of its duties hereunder." (Id. at 9 (quoting ASA § 7.04).)

NCBH also responds to Relator's objection to the Magistrate Judge's suggestion that the related-party rule did not otherwise apply because MedCost did not provide "services, facilities, [or] supplies" to NCBH. See 42 C.F.R. § 413.17(a). NCBH argues that Relator's interpretation – i.e., MedCost was not a third-party administrator and therefore NCBH was a related-party to itself under the rule – has little support in precedential case law or CMS guidance and cannot "form the foundation of an objective falsehood," as required to state an FCA claim. (See NCBH's Resp. (Doc. 89) at 11.)

Regarding retaliation, NCBH responds that Relator's argument that he could not be fired from June 2011 through August 2013 requires the court to find that NCBH was "lying in wait" for two years until NCBH "could flex its political muscle and have him fired." (Id. at 17.) NCBH argues that Relator alleged no facts to support this new theory, and that it is implausible. (Id.)

CHS makes nearly identical arguments as NCBH in response to Relator's Objections. (See CHS's Resp. (Doc. 90).) CHS highlights the additional fact that Relator's Objections focus on NCBH identifying itself as an administrator in the ASA, which is an agreement between NCBH and MedCost. (Id. at 2, 5.) CHS is not a party to that ASA, and Relator neither connects CHS to that ASA nor establishes any similarity between NCBH's ASA and one that CHS might have entered into with MedCost. (Id.)

After this court granted Relator leave to file a ten-page reply to newly-raised matters in Defendants' responses to Relator's Objection, (see Doc. 99), Relator replied separately to each Defendant's response, (Pl.'s Reply to CHS's Resp. (Doc. 101); Pl.'s Reply to NCBH's Resp. (Doc. 102)).

In reply to NCBH, Relator states that he is tendering through a contemporaneous declaration an entire version of one of the SPDs (excerpts of which NCBH and CHS attached to their responses). (Pl.'s Reply to NCBH's Resp. (Doc. 102) at 1.) Relator argues that the document creates a genuine issue of material fact as to whether MedCost served as a third-party administrator. (Id.) It appears to the court that Relator filed the referenced declaration and full SPD in support of Relator's motion to strike. (See Declaration of Charles H. Rabon, Jr., in Supp. of Mot. to Strike, Ex. 1 (Doc. 94-1).) Nevertheless,

Relator asserts that, while MedCost is designated as a Third-Party Administrator and Claims Administrator on the one-page sheets provided by Defendants, MedCost is only designated as a "non-fiduciary Claims Administrator" in the remainder of the SPD. (Pl.'s Reply to NCBH's Resp. (Doc. 102) at 2.)

Relator also contends that the complete SPD and the ASA are not the full universe of documents relevant to the issue of MedCost's status as a third-party administrator. (Id.) Relator asserts that there is a "formal Plan document" as well, which he does not have access to because discovery has not commenced in this case. (Id.) Relator claims that the formal plan document, not the SPD, controls as to the role of the Plan Sponsor, Administrator, and other fiduciaries. (Id.) Relator asserts that the ASA, however, controls as to the legal relationship between the parties. (Id. at 2-4.) Relator asks the court to conclude from the fact that Defendants did not attach copies of the full plan documents to any of their memoranda that the full plan documents do not name MedCost as a third-party administrator. (Id. at 3.)

Even if the controlling plan documents appointed MedCost as a third-party administrator, Relator argues, that appointment alone would not be sufficient to make MedCost an administrator because, under ERISA, administrators must meet the functional

test for a fiduciary. (Id. at 5-6.) MedCost cannot do that because it only performs ministerial duties. (Id. at 6.) Relator spends the remainder of his reply to NCBH differentiating among various roles, e.g., plan supervisor, plan administrator, third-party administrator, under ERISA and Medicare and reiterating why MedCost is not a third-party administrator of Defendants' self-funded plans. (Id. at 7-9.)

In reply to CHS, Relator argues that he was not required to allege that any (hypothetical) administrative services agreement between MedCost and CHS is identical to the ASA between MedCost and NCBH. (Pl.'s Reply to CHS's Resp. (Doc. 101) at 3.) He asks this court to presume that any administrative services agreement existing between MedCost and CHS is substantively the same as the ASA between MedCost and NCBH because, if it was not, CHS would have provided the agreement to the court. (Id. at 2.) Relator also argues that he did not rely on the ASA "to request a summary judgment," so he therefore "objects to CHS's attempt to convert the pending motion to dismiss into a motion for summary judgment by attaching [the one-page sheets from the SPDs] prior to discovery, that are not referred to or necessarily central to the SAC." (Id.)

## III. **STANDARD OF REVIEW**

This court makes a de novo determination of those portions of the Magistrate Judge's Recommendation to which the parties have specifically objected. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "[T]he court may accept, reject, or modify, in whole or in part," the Magistrate Judge's Recommendation, "or recommit the matter to the [M]agistrate [J]udge with instructions." 28 U.S.C. § 636(b)(1). This court applies a clearly erroneous standard to those findings by the Magistrate Judge to which the parties have not specifically objected. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note to 1983 addition).

## IV. **ANALYSIS**

This court has reviewed those portions of the Magistrate Judge's Recommendation to which Relator objected. The court has made a de novo determination that is in accord with the Magistrate Judge's Recommendation (including those findings not summarized herein), subject to the discussion below. This court finds no clear error in those portions of the Recommendation to which Relator did not object. This court therefore adopts the Magistrate Judge's recommendation, and Relator's Second Amended Complaint will be dismissed with prejudice.

Relator's main objection is that "the entire [Recommendation] is tainted by the Magistrate's legally and factually mistaken conclusion on the [third-party administrator] issue." (Obj. (Doc. 86) at 20.) This court is not convinced that the Magistrate Judge "concluded that MedCost was a third-party administrator for the Defendants' employee benefit plans," as Relator argues. (Id. at 2 (emphasis added).) What the Magistrate Judge concluded was that MedCost's status as a third-party administrator in its relationship with Defendants was sufficiently ambiguous to preclude a finding that Relator plausibly alleged that Defendants acted with the requisite scienter. (See Recommendation (Doc. 83) at 48-50, 53-54.) Because Relator's fraud theory depends on MedCost's status as a third-party administrator, Relator needed to plausibly allege that Defendants acted knowingly, which in the FCA context here means actual knowledge that MedCost was not a third-party administrator or deliberate ignorance or reckless disregard of the truth of that information. See 31 U.S.C. §§ 3729(a)(1) and (b)(1). The Magistrate Judge merely emphasized that the CMS guidance to which Defendants' employees could have hypothetically looked to determine whether MedCost was a third-party administrator for purposes of allowable costs did not clearly prohibit the costs as claimed. (See Recommendation (Doc.

83) at 50 ("[N]othing in the relevant CMS guidance indicates that the [Defendants] lacked authorization to claim as allowable costs the amounts that MedCost paid [them] . . . .").) The North Carolina Department of Insurance Third Party Administrator Directory's listing of MedCost as a licensed third-party administrator in North Carolina further defeated an inference of scienter, but it was not a finding that MedCost was in fact a third-party administrator under Defendants' plans. (See id. at 45-46 (finding that the Second Amended Complaint's failure to suggest that the certifying employees "bore any awareness" that MedCost was not a third-party administrator "holds particular significance given that the North Carolina Department of Insurance identifies MedCost as a licensed 'Third Party Administrator'").) Contrary to Relator's assertion, the Magistrate Judge did not "simply disbelieve[]," (Obj. (Doc. 86) at 6), Relator's allegations that Defendants' self-funded employee benefits plans did not have a third-party administrator.

In support of his Objections, Relator submitted the ASA between NCBH and MedCost. (ASA (Doc. 87-1).) Relator's counsel, Mr. Rabon, states in his declaration: "This is an agreement referenced in the Second Amended Complaint in various places including, inter alia, at paragraph 29 and following, and in

footnote 5 at page 14." (Rabon Decl. (Doc. 87) ¶ 3.) The Second Amended Complaint does not explicitly identify the ASA but does so implicitly. (See, e.g., Second Am. Compl. (Doc. 62) ¶ 29 n.5 ("Despite loose language used by the Hospital Defendants, the Relator and others referring to MedCost as a 'TPA,' contractually it is not a 'third party administrator' under its agreements with the Hospital Defendants; it was intentionally relegated to the lower status of a 'plan supervisor' with ministerial duties only . . . ."). Defendants do not challenge the authenticity of this document or Relator's assertion that the ASA qualifies as "an agreement referenced in the Second Amended Complaint."[3] (Rabon Decl. (Doc. 87) ¶ 3; see NCBH's Resp. (Doc. 89) at 2, 9; CHS's Resp. (Doc. 90) at 2, 5.) Defendants tendered in response the SPD excerpts. (NCBH SPDs (Doc. 89-1); CHS SPDs (Doc. 90-1).) Relator now argues to this court that he "has not yet relied upon the ASA or any other document to request a summary judgment and objects to CHS's attempt to convert the pending motion to dismiss into a motion for summary judgment by attaching" the SPD excerpts. (Pl.'s Reply to CHS's Resp. (Doc. 101) at 2.)

---

[3] CHS does challenge the relevance of NCBH's ASA to CHS. (See CHS's Resp. (Doc. 90) at 5.)

As should have been evident from this court's orders granting Relator's motion to file a reply in support of his Objection, (Doc. 99), and denying Relator's motion to strike, (Doc. 100), this court generally considers new evidence when parties object to a magistrate judge's recommendation. This court is explicitly authorized to receive new evidence as part of its de novo review of a recommendation. See 28 U.S.C. § 636(b)(1) ("The judge may also receive further evidence . . . ."); Fed. R. Civ. P. 72(b)(3) ("The district judge may . . . receive further evidence . . . ."); see also 12 Charles Alan Wright et al., Federal Practice and Procedure § 3070.2 (2d ed. 2018) ("The statute and the rule both confirm, further, that the district judge is completely free to supplement the record developed by the magistrate judge with further evidence . . . .").

The ASAs, SPDs, and the parties' comprehensive memoranda further support the Magistrate Judge's finding that Relator failed to plausibly allege that Defendants knowingly submitted false claims. As Defendants note, the ASA indicates that MedCost functions as a third-party administrator under the relevant health care plan, undermining any inference of scienter. (See ASA (Doc. 87-1) § 7.04 ("The Plan Supervisor [i.e., MedCost] shall use the care and reasonable diligence expected of

similarly situated third party administrators in accordance with industry standards in the exercise of its powers and performance of its duties hereunder.").) The one-page General Plan Information sheets explicitly designate MedCost as the Third-Party Administrator. (<u>E.g.</u>, NCBH SPDs (Doc. 89-1) at 20, 28.)

The entire SPD tendered by Relator in support of his motion to strike, (Rabon Decl., Ex. 1 (Doc. 94-1)), does create a scintilla of doubt as to whether MedCost was truly a third-party administrator or a "non-fiduciary Claims Administrator." (Pl.'s Reply to NCBH's Resp. (Doc. 102) at 2.) But that scintilla of doubt does not carry the day for Relator due to the extent of the shortcomings in his scienter allegations. Neither Relator's argument that, because Defendants did not tender to the court the full plan documents, those documents must not identify MedCost as a third-party administrator, (<u>id.</u> at 3), nor Relator's assertion that, because NCBH President and CEO Len Preslar signed the ASA, he knew the certifications were false, (Obj. (Doc. 86) at 11), sway this court in determining that Relator failed to sufficiently allege scienter. This court need not accept as true such conclusory and unsupported allegations. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted) (reiterating the insufficiency of naked assertions devoid of further factual enhancement); <u>Takeda</u>

Pharm., 707 F.3d at 455 (citation and internal quotation marks omitted) ("[A]lthough we must view the facts alleged in the light most favorable to the plaintiff, we will not accept . . . unwarranted inferences, unreasonable conclusions, or arguments.").

Relator asserts in a derivative argument that the Magistrate Judge erred in holding that the Medicare rules are inapplicable, (see Obj. (Doc. 86) at 6-7); he again misinterprets the Recommendation. The Magistrate Judge found that the plain language of the related-party rule, 42 C.F.R. § 413.17(a), "suggests its inapplicability to the pertinent transactions." (Recommendation (Doc. 83) at 51 (emphasis added); see also id. at 52 (emphasis added) ("[MPRM, Part I, §§] 332.1 and 2144.4 lack clear applicability to the determination of the [Defendants'] allowable domestic care costs.").) The Magistrate Judge analyzed the Medicare rules and found that Relator did not allege that Defendants acted with the requisite scienter because the ambiguity of the rules' application to the object transactions did not compel an inference that Defendants acted with knowledge, deliberate ignorance, or reckless disregard. (Recommendation (Doc. 83) at 47-48); see 31 U.S.C. § 3729(b)(1).

To the extent that the Recommendation finds that MedCost was in fact the third-party administrator or that, if MedCost

was not, the related-party rule did not apply to any of the transactions at issue, this court does not adopt these specific findings.[4] However, the lack of clarity on both of those questions (and the applicability of the relevant Medicare rules generally) easily convinces this court to adopt the Recommendation's finding that Relator insufficiently pled scienter.

The parties spend much of their post-Recommendation briefs attempting to litigate whether MedCost was the third-party administrator to Defendants' self-funded employee benefit plans. It appears to this court that a negative answer to that question is a necessary component of Relator's fraud theory. But even assuming arguendo that this court was persuaded that MedCost was in fact not acting as a third-party administrator, that fact alone is not sufficient to plausibly allege scienter in the FCA context. The FCA scienter requirement is rigorous. Universal Health Servs., Inc. v. United States, 579 U.S. ____, ____, 136 S. Ct. 1989, 2002 (2016). It requires actual knowledge of the information or deliberate ignorance or reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1). It was Relator's burden to plausibly allege such scienter. See

---

[4] This court also does not find independently one way or the other on those issues.

Wilson, 525 F.3d at 379. After reviewing the Recommendation, this court has made a de novo determination that Relator did not plausibly allege Defendants' scienter.

As to the retaliation claims, this court finds Relator's argument that Defendant NCBH waited two years to fire him implausible. Further, Relator argues in the Objections that an August 2013 statutory amendment enabled the October 2013 reclassification of his position as managerial exempt and led to his December 2013 termination by eliminating his right to a contested hearing to challenge his exempt designation. (See Obj. (Doc. 86) at 18-19 (citing Vincoli v. State, ____ N.C. ____, ____, 792 S.E.2d 813, 815 (N.C. Ct. App. 2016)).) The court notes that, notwithstanding this statutory amendment, Relator apparently retained the right to a contested hearing to challenge the exempt designation. See Vincoli, 792 S.E.2d at 818-19 ("[T]he plain language of N.C. Gen. Stat. § 126-5(h) provides Vincoli with a statutory right to a hearing before [the Office of Administrative Hearings] as to whether he is subject to the Act, which would implicate addressing whether his exempt designation was proper."). The court has reviewed Relator's objections to the retaliation findings in the Recommendation and made a de novo determination that accords with the Recommendation.

Additionally, while the Fourth Circuit has not addressed the issue, it appears clear to this court from the current case law that 31 U.S.C. § 3780(h) does not contemplate a remedy for post-termination retaliation. See, e.g., Potts v. Ctr. for Excellence in Higher Educ., Inc., 244 F. Supp. 3d 1138, 1143 (D. Colo. 2017), aff'd, 908 F.3d 610 (10th Cir. 2018) ("[T]he only reasonable interpretation is that the FCA's anti-retaliation provision covers current employees to the exclusion of former employees."); Fitzsimmons v. Cardiology Assocs. of Fredericksburg, Ltd., Civil Action No. 3:15CV72, 2015 WL 4937461, at *7 (E.D. Va. Aug. 18, 2015) (collecting cases) ("The vast majority of courts to have considered [whether 31 U.S.C. § 3730(h) provides a remedy for post-termination retaliation] have found, most even at the motion to dismiss stage, that § 3730(h) provides no remedy for [post-termination] retaliation . . . ."); United States ex rel. Head v. Kane Co., 798 F. Supp. 2d 186, 208 (D.D.C. 2011) ("The plain language . . . clearly establishes that Section 3730(h) applies only to the employment context and, therefore, cannot extend to claims for retaliatory action occurring solely after a plaintiff has been terminated from his job.").

This court has also reviewed Relator's commentary as to the Magistrate Judge "noting" the United States' non-intervention in

the Recommendation. (Obj. (Doc. 86) at 14.) The Magistrate Judge drew no improper inference from that non-intervention. Further, the Magistrate Judge did not "conclu[de] that the SAC was filed in bad faith," (id. at 16); rather, the Magistrate Judge merely noted – as one of several grounds to deny leave to amend – that Relator's current request for leave to amend suggested bad faith, (see Recommendation (Doc. 83) at 74).

**IT IS THEREFORE ORDERED** that the Magistrate Judge's Recommendation, (Doc. 83), is **ADOPTED.**

**It IS FURTHER ORDERED** that Plaintiff's objections, (Doc. 86), are **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendant NCBH's Motion to Dismiss Plaintiff's Second Amended Complaint, (Doc. 64), and Defendant CHS's Motion to Dismiss Plaintiff's Second Amended Complaint, (Doc. 67), are **GRANTED** and that Plaintiff's Second Amended Complaint, (Doc. 62), is **DISMISSED WITH PREJUDICE.**

A Judgment dismissing this action will be entered contemporaneously with this Order.

This the 4th day of February, 2019.

_____
United States District Judge